## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KEVIN BERNHARDT, | ) | CASE NO. 4:11CV3042 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| DAN DANAHER, KIM DOHT, TERRY | ) | |
| BUTKUS, JOHN CASEBOLT, and | ) | |
| STEVE TOLLEFSON, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motion for Summary Judgment. (Filing No. 62.) As set forth below, Defendants' Motion is granted and this matter is dismissed with prejudice.

### *BACKGROUND*

Plaintiff Kevin Bernhardt ("Bernhardt") filed his Complaint in this matter on March 22, 2011. (Filing No. 1.) The court conducted a detailed initial review of the Complaint and permitted Plaintiff to complete service of process on Defendants in their individual capacities only. (Filing No. 17.) Liberally construed, Bernhardt alleges that Defendants violated his Eighth Amendment rights to medical care and safety while incarcerated. (Filing No. 1.)

Defendants filed their Motion for Summary Judgment on November 18, 2011. (Filing No. 62.) In support of the Motion, Defendants filed a Brief (filing no. 63) and an Index of Evidence (filing no. 64). After an extension of time, Bernhardt filed a Response

to the Motion (filing no. 69), two Affidavits (filing nos. 70 and 71), and a "Statement of Disputed Factual Issues" (filing no. 72).[1]

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e), ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Defendants submitted a statement of material facts in accordance with the court's Local Rules. Further, Defendants submitted evidence which was properly authenticated by affidavit or sworn deposition testimony. Plaintiff responded by filing two Affidavits and an unsupported "Statement of Disputed Factual Issues." Defendants' Motion is therefore deemed fully submitted and the court adopts the following undisputed material facts.

---

[1]Also pending before the court are several discovery-related Motions and Objections filed by the parties. However, Plaintiff does not assert that the discovery sought affects his arguments in opposition to the pending Motion for Summary Judgment or has interfered with his ability to respond. As such, the court denies those pending motions as moot.

2

### RELEVANT UNDISPUTED FACTS

1.      Bernhardt was, at all relevant times, an inmate at the Nebraska State Penitentiary ("NSP").

2.      Defendant Tollefson was, at all relevant times, a food service employee at NSP.

3.      Defendant Danaher was, at all relevant times, a physician assistant working at NSP.

4.      Defendant Doht was, at all times relevant, a nurse practitioner working at NSP.

5.      Defendant Butkus was, at all relevant times, a nurse practitioner working at NSP.

6.      On July 16, 2010, Bernhardt arrived at the NSP.

7.      Upon his arrival at NSP, Bernhardt had the following work restrictions:  no standing longer than one hour, no excessive exposure to direct sunlight, no excessive exposure to extreme temperatures, and no excessive exposure to environmental stressors.

8.      In August of 2010, Defendant Tollefson, the food manager at NSP, offered Bernhardt a job in the NSP kitchen as a tray room worker.

9.      Tray room workers were responsible for cleaning and sanitizing trays, bowls, cups, and silverware after meals, wrapping silverware, and passing out silverware.  They were also responsible for maintaining cleanliness of the work area according to safety and sanitation procedures.

10.      Because of Bernhardt's work restrictions, he would not be required to stand for more than one hour at a time during his shifts.  This generally would not be a problem because the tray room workers do not have to stand until the inmates had finished eating and had begun to return their trays, but in the event that he would be on his feet for one hour, it was agreed that he would be able to leave his shift early.

11.      On October 20, 2010, Bernhardt reported to Defendant Tollefson that he slipped and fell while working in the kitchen and that he hurt his left knee and leg. Bernhardt was either removing silverware from the dishwashing machine or taking a rack of tableware out of the dishwashing machine.

12.      After reporting that he had fallen, Bernhardt visited the NSP medical clinic.

3

13.     At the NSP medical clinic, Defendant Doht treated Bernhardt.  At that time, Bernhardt complained of pain in his left hip and left knee.  Defendant Doht noted no bruising or swelling on Bernhardt's left knee and hip, but treated him by ordering Tylenol, an ice bag, and crutches.  Defendant Doht also instructed Bernhardt not to work for seven days.

14.     On October 22, 2010, Bernhardt informed NSP staff that his leg still hurt and that he felt like he was getting a blood clot.  Bernhardt was then admitted to the NSP hospital where he was placed on bed rest and monitored.

15.     After being admitted to the NSP hospital, Bernhardt complained that he was feeling numbness in his leg so he was transported to Bryan LGH Hospital.

16.     At Bryan LGH Hospital, Dr. Duval, a physician not employed at NSP, treated Bernhardt.  Dr. Duval found no signs of blood clots in Bernhardt's leg.  Bernhardt returned to the NSP hospital.

17.     When Bernhardt returned to NSP, medical staff continued to follow up with him regarding his pain.  NSP medical staff also provided Bernhardt with crutches, an ice bag, and a muscle relaxant.

18.     On November 10, 2010, Defendant Doht again treated Bernhardt.

19.     Because no medical abnormalities were noted, Defendant Doht advised Bernhardt during the November 10, 2010, visit to continue activity and to return to work.  Defendant Doht also discontinued Bernhardt's use of crutches as of November 10, 2010.

20.     On December 9, 2010, Dr. Whittle, of Lincoln Surgical Group, interpreted a scan of Bernhardt's injured leg and noted that the scan demonstrated no evidence of blood clots.  Dr. Whittle noted that some previous deep vein thrombus chronic may be present which would indicate that blood clots could have been present in the past but would be unrelated to symptoms that inmate Bernhardt experienced in October, November or December of 2010.

(Filing Nos. 64, 70, and 71.)

## *ANALYSIS*

### I.     *Standard of Review*

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

4

Civ. Pro. 56(c).  *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue.  *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion.  *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994), (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).  "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.*  Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## II.   *Defendants' Motion–Qualified Immunity*

Defendants argue that they are entitled to qualified immunity because Bernhardt has not shown the violation of any constitutional right.  (Filing No. 63.)  The court agrees and finds that summary judgment in favor of Defendants is warranted.

### A.   **Legal Standards**

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).  "Public

officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000), (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000), (citations and quotations omitted).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted).  Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases."  *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether a state official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006), (citations and quotations omitted).  Thus, the "initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. . . . If the facts do not show a violation, [a court] need not proceed further with the qualified immunity analysis." *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007).

6

**B.      Deprivation of a Constitutional Right**

Liberally construed, Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983 and alleges that Defendants violated Plaintiff's Eighth Amendment right to receive medical care and right to a safe environment while incarcerated because they failed to properly treat his leg injury and failed to prevent him from injuring his leg while working in the NSP kitchen.  (Filing No. 1.)  As set forth below, Defendants provided Plaintiff with appropriate medical care in accordance with their obligations under the Eighth Amendment and did not act with deliberate indifference regarding the kitchen safety conditions.  Therefore, no Eighth Amendment violations occurred and Defendants are entitled to qualified immunity.

*1.      Eighth Amendment Medical Claim*

To sustain a claim relating to medical care under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The plaintiff must allege and show that he suffered objectively serious medical needs, and that officials actually knew of but deliberately disregarded those needs.  *Hartsfield v. Colburn*, 491 F.3d 394 (8th Cir. 2007).  "[S]ociety does not expect that prisoners will have unqualified access to health care."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.* (citing *Estelle*, 429 U.S. at 103-104).  However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

7

*Estelle*, 429 U.S. at 106; *see also Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.") (quotation omitted); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993), ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.")

A "serious" medical need must be either obvious to a layperson or supported by medical evidence, such as a physician's diagnosis. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999). Further, the failure to diagnose and treat a medical condition "does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997), (citations omitted). Bare assertions or a "self-diagnosis," without more, are not enough to sustain an Eighth Amendment claim. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *see also Long v. Nix*, 86 F.3d 761 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.").

Viewing the facts in the light most favorable to Bernhardt, his overall medical condition was serious. He suffered a fall while working and experienced immediate pain.

Moreover, Defendants do not dispute that Bernhardt's medical needs were serious. Thus, the question for the court is whether Defendants were deliberately indifferent to Bernhardt's serious medical needs. Plaintiff's allegations of "deliberate indifference" relate entirely to his assertions that he suffered from "blood clots," which Defendants failed to properly treat. However, as set forth above, Plaintiff has no right to receive a particular course of treatment.

Defendants have submitted evidence that Bernhardt received extensive medical treatment for injuries related to his October 20, 2010, fall. Indeed, Plaintiff received ongoing treatment for his medical conditions, including several physician visits and the administration of medication. Bernhardt saw Defendant Doht immediately after the injury and she ordered the use of an ice bag, crutches, Tylenol, and that Bernhardt remain off work for seven days. (Filing No. 64-4 , Attach. 4, at CM/ECF p. 1.) Two days later, Bernhardt received additional treatment, including admission to the NSP hospital for monitoring. (*Id.* at CM/ECF p. 3.) Due to Bernhardt's symptoms of numbness and pain, Defendants ordered that he be transferred to the Bryan LGH Hospital emergency room for additional treatment. (*Id.*) The emergency room physician determined that Bernhardt did not have a blood clot, but had a history of blood clots. (Filing No. 64-5, Attach. 5, at CM/ECF p. 1.) Bernhardt received extensive medical treatment at NSP after his discharge from the emergency room, including at least four physician visits and medication. (Filing No. 64-4, Attach. 4, at CM/ECF pp. 3-5.) Bernhardt received a scan of his injured leg on December 9, 2010, which showed no acute blood clot, but that Bernhardt had a history of blood clots. (Filing No. 64-6, Attach. 6, at CM/ECF pp. 1-2.)

Taken together, the undisputed evidence shows that Bernhardt received extensive medical care over the course of several months, and was treated on an ongoing basis from the time he fell.  Bernhardt has not submitted any evidence controverting these facts or showing that his medical conditions were deliberately disregarded or ignored by Defendants.  Additionally, there is nothing in the record before the court supporting Bernhardt's "self diagnosis" that his leg pain was caused by an untreated blood clot. Rather, the undisputed evidence shows that Plaintiff received immediate and ongoing care for his pain, and that two separate physicians outside of the NSP determined that Bernhardt did not actually have an acute blood clot.

In short, Bernhardt's complaints regarding the treatment he received from Defendants after his October 20, 2010, fall amount to, at best, "disagreement with a medical judgment," which is not enough to sustain an Eighth Amendment claim. *Davis, 992 F.2d at 153 (8th Cir. 1993)*.  Although Plaintiff believes he had a blood clot and should have been immediately hospitalized and treated for that condition, he has no right to a "requested course of treatment."   The uncontroverted facts show that Defendants exercised their professional judgment in treating Bernhardt.  Plaintiff has submitted no evidence to the contrary. *Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007)*, ("In the face of . . . physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.") (internal quotations omitted).   In light of this, Defendants provided adequate care to Plaintiff and no constitutional violation occurred. As such, Defendants are entitled to qualified immunity.  The Eighth Amendment medical claims against Defendants are therefore dismissed with prejudice.

2.    *Eighth Amendment Safety Claim*

The court liberally construes Plaintiff's Complaint to allege an Eighth Amendment claim related to Plaintiff's safety against Defendant Tollefson.  A prisoner asserting a violation of his Eighth Amendment safety rights must show "deliberate indifference"or reckless or callous disregard of a known, excessive risk of serious harm to the safety of the plaintiff.  *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002).  Moreover, a viable Eighth Amendment claim consists of an objective component and a subjective component.  *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998).  "To prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind."  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Further, "mere negligence does not support a conclusion that a prison official exercised callous disregard or reckless indifference in responding to the risk."  *Norman v. Schuetzle*, 585 F.3d 1097, 1106 (8th Cir. 2009), (quotation omitted); *see also Perry v. Deshazer*, No. 92-3449, 1993 WL 298970, *1 (8th Cir. Aug. 3, 1993), (finding no Eighth Amendment violation where the defendants failed to provide rubber boots, failed to keep floor of prison kitchen free from water, and failed to use rubber mats or warning signs because such conduct "sounds in negligence" only).

Here, the undisputed facts show that Bernhardt slipped while working in the kitchen. The parties disagree regarding whether Defendant Tollefson knew of a problem which may have created the wet conditions leading to Bernhardt's fall.  There is also disagreement regarding whether Bernhardt knew of his work restrictions.  However, even if the court

views the facts in the light most favorable to Bernhardt, in accordance with the standards set forth above, such allegations amount to negligence only.  Indeed, for purposes of this analysis, the court assumes that Tollefson: (1) knew about the wet conditions created by the dishwashing machine, (2) failed to provide Bernhardt with rubber boots, floor mats, "wet floor signs," and other equipment, (3) and failed to advise Bernhardt about his work restrictions.  However, as in *Perry*, such facts show negligence at best, and are not actionable under the Eighth Amendment.  As such, Defendants are entitled to qualified immunity and Bernhardt's Eighth Amendment safety claim is dismissed.

IT IS THEREFORE ORDERED that:

1.      Defendants' Motion for Summary Judgment (Filing No. 62) is granted;

2.      A separate judgment will be entered in accordance with this Memorandum and Order; and

3.      All other pending motions are denied as moot.

DATED this 24th day of February, 2012.

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

12